Hitchcock, J.
It will be seen that'there is great similarity between this case, and the case of Johnson against the same defendants, decided at the present term. The records show that the lands in which dower had been assigned, or attempted to be assigned, were adjoining lands, and the quantity in each case was not materially variant. At the same time and in the same Court, the same individual had preferred a claim to dower, and in each case and at the same November term of the Court, the defendants were each ordered to pay one hundred thirty-seven dollars and fifty cents, in full of the dower claims. The breach assigned in bach case is the same. We have already *74 decided that the facts set forth in the case of Johnson against riefen(]ants do not constitute a breach of the covenant of The deed in the case before the Court, however, contains a covenant against incumbrances, and it remains to determine whether that covenant has been broken, so as to entitle the covenantee to a right of action. The facts alleged as constituting the breach are, that one Alexander McLain, previous to 1822, had an estate of inheritance in the premises, that while he had such estate, he had a wife by the name of Jane McLain, that he died in March, 1844,- that soon thereafter his widow prosecuted her claim to dower, that such proceedings were had that the Court finally made an order, or decree, that the tenant in possession, the covenantee, should pay to the widow one hundred and thirty-seven dollars and fifty cents, in full of dower, and that the defendant, the covenantee, has not paid the amount so decreed. To these proceedings neither Nyce nor his executors, were parties, nor of them had they any notice.
Here it may be well to inquire, whether the dower .interest of Jane McLain was an incumbrance upon this land, which is covered by the covenant against incumbrances in the deed. That covenant is, that the premises are free and clear of all incumbrances, not that the same shall remain free from future incumbrances. It is a covenant in presentí, and if there are incumbrances, the covenant, technically speaking, is broken, when made. Still the covenantee cnnnot have an action until he has been damnified in consequence of the covenant. He is not bound to wait, it is true, until he is evicted, but may pay off and satisfy the incumbrance, if the extent of it can be well ascertained, and then have his action. It is not necessary that he should in all cases wait even for a judicial determination of the amount, although this is preferable. The most common incumbrances in this country are mortgages, judgments and the like, and the extent or amount of these may be easily ascertained. In the case before the Court, the covenant was entered into in 1822. At that time there was no outstanding dower *75 claim upon the property. True, Alexander McLain had once been-the owner of the-land, and Jane McLain was his But both were then living and it depended upon the contingency of which should first die, whether there ever would-, or could be any claim., for dower, any incumbrance of this nature upon the land. Suppose by contract,- A. should bind himself, for a consideration to be paid, to convey to B. by deed, containing covenants of warranty, and against incumbrances, a tract of land, could B. avoid the performance of the contract, by showing that by possibility there might be, at some future time, a dower claim like the one in the present case ? It seems to me not, but that B. would be compelled to take the land and rely upon his covenant. The case would be different, however, should he, after making the contract, discover that the land was incumbered by judgment or mortgage.
There can be no doubt that this dower interest would be within the covenant against incumbrances, according to the forms of that covenant as used in the English mode of conveyancing. It is as follows, following the covenant for quiet enjoyment: “ And that free and clear, and-freely and clearly and absolutely acquitted, exonerated, released and discharged, or otherwise, by him, (the vendor,) his heirs, executors and administrators, at his or their own costs and charges, in all things, well and sufficiently protected, -defended, saved harmless and kept indemnified, of, from, and against all, and all manner of former, and other gifts, grants, feoffments, leases, mortgages, bargains, sales, jointures, dowers, right and title of dower, uses, trusts, wills, entails, annuities, legacies, rents, arrears of rent, fines, amerciaments, statutes, recognizances, judgments, executions, extents, suits, decrees, debts of -record, debts to the King’s Majesty, or any of his predecessors, sequestration estates, titles, troubles, leins, charges and incumbrances whatsoever.” (10 Ohio R, 324, note.) According to our mode of conveyancing, this covenant is, as in the deed referred to'in the declaration, generally expressed in these few words: “ That the premises are free and clear from all incumbrances'-whatsoever. And un *76 der Such a covenant it seems to me somewhat doubtful whether c^a™ dower like the-one in the present case, can, by fair be brought within the operation of the covenant. The general impression however, is probably otherwise, and we do not deem it necessary definitely to decide this question.
Admitting that here Was an incumbrance, it was of that character that the extent and amount of it could not be ascertained, like the amount due upon a mortgage or judgment. It must of necessity be ascertained by the judgment or decree of a Court of competent jurisdiction. And when so ascertained, the tenant or covenantee, may have his action against the covenantor for indemnity. But before the covenantor can be bound by such judgment and decree, it must be in conformity with the statute regulating dower; and we have already decided in the case of Johnson, that a decree like the one relied upon in this case, is not in accordance with that statute.
But it may be supposed, that inasmuch as in this deed there is a covenant against incumbrances, the decree has ascertained the extent or value of the incumbrance. This finding is as of the value of the incumbrance at the time the assignment is made, not as of the value at the time the covenant was entered intOj and therefore it furnishes no rule by which the damages upon the action of covenant can be' estimated. Had the decree been in conformity with the statute, there would have been no difficulty as to the rule of damages. We all know that the consideration money paid is the rule of damages in an action on the covenant of warranty, to which will be added interest from the time of eviction, or from some other reasonable time, and in no case can the damages for a breach of the covenant against incumbrances exceed the amount of consideration money. (10 Ohio R. 317.) If a title to a part of the premises fails, damages will be apportioned according to the quantity. The Court of Common Pleas seems to have considered that the defendant in error was entitled to recover the amount awarded in the dower case. At least, I suppose it must have been soj for I cannot otherwise see how the judgment was made up — and it leads to *77 this absurdity: if the title to one third of the premises had entirely failed, the covenantee could have recovered but one third part of the.consideration money originally paid, that is $166 66, whereas for the incumbrance of the life estate of a woman of whose age we know nothing, but who must have been married previous to 1822, he recovers $137 50, leaving $29 16 as the reversionary interest.
Had it been alleged in the declaration, that the tenant in possession, occupying the place of covenantee, had compromised the claim for dower by the payment of a stipulated sum, this payment would have furnished no rule of damages, nor would the allegation show any breach of covenant. Neither will the action of the Court of Common Pleas, in ordering a gross sum to be paid in full of dower; especially in a case where neither the covenantor nor his representatives are parties. But in order to constitute a breach it must appear that the law regulating dower has been complied with.
There may be, and undoubtedly will be, difficulties in doing perfect justice, where after an eviction, or that which is equivalent to it under the dower law, the then owner of the fee simple interest seeks redress against a remote covenantor, but we must approximate to it as near as we can. And this can only be -done by adopting the rule as laid down in the case of John-' son. If the lands have increased in value, the value of the dower itself will be increased ; but this increased value cannot with propriety affect the rights of the remote grantor. He can not be charged beyond what the rules of law as applicable to his contract require. Under the rule for the assignment of dower, as it is understood in England, in New York, in other States of the Union, and as it was practiced in this State previous to 1838, these difficulties would in a great measure, if not entirely,, have been avoided. That rule recognized that where lands had been aliened in. the life time of the husband, the dower should be assigned as of the value of the lands at the time of alienation, not at the time of the assignment^
After full consideration we are of opinion that the facts al *78 leged as constituting a breach of the covenant' in the deed deupon, do not in law constitute a breach of 'both or either of those covenants, and that the declaration is insufficient inlaw. The judgment of the Court of Common Pleas is therefore reversed.