[Filed November 15, 1887.]

## D. E. BUDD, APPELLANT, v. MULTNOMAH STREET RAILWAY COMPANY, RESPONDENT.

FORMER APPEAL—LAW OF THE CASE.—The ruling of this court on the former appeal has become the law of the case.

REMEDY—ACTION AT LAW WILL NOT LIE, WHEN.—An action at law will not lie to recover the possession of a franchise. It is not tangible or capable of any kind of physical identification or delivery.

REMEDY—ACTION TO RECOVER DAMAGES.—At common law, an action on the case would lie to recover damages for the disturbance of the plaintiff in the enjoyment of a franchise; but in such case the party recovers damages, and not the possession of the particular franchise.

ESTOPPEL.—When the plaintiff was the efficient cause of the defendant making large expenditures of money, and he was one of its officers at the very time and superintendent of the work, he is estopped, and could not set up his own acts, as such superintendent, as the identical wrong committed by defendant, of which he now complains.

GRANT TO D. E. BUDD AND SUCH PERSON AS HE MAY ASSOCIATE WITH HIMSELF THEREIN.—Effect of such grant considered, but not expressly decided.

APPEAL from Multnomah County.   Affirmed.

*H. T. Bingham,* and *Cornelius Taylor,* for Appellant.

*Killin & Starr,* and *Moreland & Masters,* for Respondent.

STRAHAN, J.—This is an action to recover damages against the defendant, at the rate of one thousand dollars per month, from and after the twenty-third day of October, 1882, for the alleged unlawful disturbance, by the defendant, of the plaintiff in the use and enjoyment of a certain franchise granted by the city of Portland to the plaintiff. The franchise set up in the complaint is the right and privilege to lay down and maintain an iron railroad track or tracks, and to operate street railways within the city of Portland, upon certain streets mentioned in the ordinance making the grant. The grant is made to D. E. Budd, and such other person or persons as he may associate with himself therein. The complaint alleges compliance with the terms of the ordinance on the part of Budd. The manner of such compliance is fully alleged. It is stated that on or about June 14, 1882, this plaintiff and others duly incorporated themselves under the name of the Multnomah Street Railway Com-

pany, and as such corporation, *they* purchased the materials, constructed a line of street railway in accordance with the terms of said ordinance No. 3,477, and in such manner as to comply with the terms and requirements of said ordinance. . . . . "And thereafter they procured street railway cars of the kind required by said ordinance, and placed them upon the lines of said railway, provided horses for drawing the same, and placed the said railway and cars in complete order and condition for operating the same, in the manner and subject to all the terms, restrictions, and conditions in said ordinance No. 3,477 contained and required; that the plaintiff procured the construction of said street railway, and the obtaining of said horses and purchase of said cars, as aforesaid, by the Multnomah Street Railway Company, but he never assigned the whole or any portion of said right and privilege granted to him by ordinance No. 3,477 to defendants; that plaintiff never assigned the whole or any portion of the franchise or privilege granted to him by said ordinance No. 3,477, aforesaid, nor has he ever associated with him any person or persons whatever in the use and enjoyment of the same; and ever since said June 12, 1882, he has been, and now is, the sole owner of said franchise, and of all the rights, privileges, and immunities lawfully pertaining thereto or existing thereunder."

It is then alleged, in substance, that on the twenty-third day of October, 1882, the plaintiff was the sole and exclusive owner of the right of carriage and conveyance of passengers thereon and over the same for hire in the railway cars as aforesaid.   Nevertheless, the said defendant, the Multnomah Street Railway Company, not being the owner of said franchise and privilege, or of any interest therein, and not being associated with the plaintiff therein, but well knowing the premises, and contriving to disturb and injure the plaintiff in the peaceable and lawful enjoyment and use of his said franchise of operating said street railway and carrying passengers thereon for hire, on the said twenty-third day of October, 1882, and continuously thereafter ever since to the present time, injuriously, unlawfully, and against the will of the plaintiff, has claimed the street railway and cars and horses as its own, and has possessed itself to the entire exclusion of

plaintiff of said street railway cars and horses, and has occupied by the said railway track, cars, and horses, the portions of the streets aforesaid, upon which he has the right, as against the defendant, to maintain and operate a street railway, and has thereby prevented the plaintiff from maintaining and operating a street railway thereon as he otherwise could and would have done, and has carried and conveyed divers passengers for hire over and upon said street railway heretofore mentioned and described, and continues so to do up to the present time; and that by reason thereof, the plaintiff has been deprived of divers profits and emoluments, which would otherwise have arisen and accrued to him from the enjoyment of said franchise, and has been greatly disturbed in the possession thereof, and his right and title thereto, to his damage in the sum of one thousand dollars per month from said twenty-third day of October, 1882. The prayer is for judgment against the defendant for the sum of one thousand dollars per month, from said twenty-third day of October, 1882, and for the possession of his franchise and privilege aforesaid, and for costs, etc.

This is the second appeal in this cause. When it was formerly here, it was upon a demurrer to the complaint, and this court then reversed the ruling of the court below sustaining the demurrer, and remanded the cause for further proceedings. This court then said: "The main question presented by the demurrer was, whether the appellant, when he incorporated with others under the name of the Multnomah Street Railway Company, necessarily made the company the grantee of the franchise, whether he thereby *ipso facto* associated with himself therein the other persons so as to entitle them to the rights and privileges granted by the ordinance. Can the allegation in the complaint, that the appellant had never associated with himself any person or persons whatever in the use and enjoyment of the franchise be true, in .view of the fact that he and others incorporated themselves under said name, and that the corporation purchased material and constructed and equipped the railway as required by the ordinance by which the right was granted? and that the privilege of building the road, and equipping and operating it,

with the right to exact fare for transporting passengers thereon, is a positive right, and has an identity distinct from the structure and equipage, of which there can be no doubt?    The appellant had the option, under the ordinance, to reserve the privilege to himself exclusively, or have it vest in himself, or others whom he · might associate with himself therein.    He could have contracted with some construction company to build and equip the road for him for a compensation to be paid therefor, and retained exclusive ownership of the franchise; or he could have associated with himself such company, and thereby admitted its members to a joint proprietorship in it.    He alleges in his complaint that he adopted the former course, and whether that is true or not, depended in the opinion of this court upon proof of facts. . . . ."

I have made this long extract from the opinion, for the reason it has not been published, and for the further reason that it has become the law of the case, and, so far as the facts are the same, must govern on this appeal.    When the case was returned to the court below an answer was filed by the defendant, issues of fact being duly joined.    The case was tried by the court without the intervention of a jury, which trial resulted in findings and judgment for the defendant, from which judgment this appeal is taken.    No exceptions were taken upon the trial to the admission of evidence, and the case is here upon the questions of law arising on the findings.

So much of the findings of fact as are necessary to a proper understanding of the legal questions discussed are as follows:—

"2. That on the tenth day of July, 1882, said D. E. Budd, W. A. Scoggin, and E. J. Jeffrey, entered into a mutual oral agreement, whereby it was mutually agreed and understood by each of said parties that said W. A. Scoggin and E. J. Jeffrey should join with said D. E. Budd in the execution of the bond, which said Budd was by ordinance required to file with the auditor of said city, and that said Budd and Scoggin and Jeffrey would thereupon join and associate together on equal terms, and exercise and use the franchise granted to said Budd and his associates by said ordinance, and together build and operate and own in common and in equal shares the street railroad contem-

plated and provided for by said ordinance. And thereupon, in pursuance of said agreement and understanding, said Scoggin and Jeffrey, on said 10th of July, 1882, did join said Budd in the execution of a bond conditioned as required by said ordinance, and the same was on said 10th of July, 1882, approved by the mayor of said city, and on the next day filed with the auditor of said city, along with the written acceptance of said Budd, of the terms and conditions of said ordinance as required thereby.

"3. That on the thirteenth day of July, 1882, said D. E. Budd, W. A. Scoggin, and E. J. Jeffrey orally agreed with each other that they would form, or cause to be formed, a corporation, under the laws of Oregon, in which they would be equal owners of stock, for the purpose of constructing and operating the railroad contemplated by said ordinance, and of using the franchise granted thereby ; and they did thereupon, on said thirteenth day of July, 1882, cause to be formed a corporation known as the Multnomah Street Railway Company. The defendant herein, and said Budd, Scoggin, and Jeffrey subscribed each ten thousand dollars to the capital stock of said company, and said Budd, Jeffrey, and Scoggin orally agreed each with the other that said corporation should use, own, and exercise the franchise granted by said ordinance, and construct and operate the roads provided thereby for its own use and benefit; but said Budd did not then, nor has he ever executed any written assignment, transfer, or conveyance of the franchise granted by said ordinance, nor did he make any other written articles or agreement of association with said Scoggin and Jeffrey than the articles of incorporation of the defendant company.

"4. That by articles of incorporation the defendant corporation, among other things, proposed to build, own, and operate street railways in the city of Portland, Oregon, and to acquire, by purchase or otherwise, any street railway constructed by any other person, and also to acquire, by purchase or otherwise, any franchise granted by the city of Portland for the construction and operating of any street railways in said city.

"5. That said corporation duly perfected its organization,

and E. J. Jeffrey and W. A. Scoggin and D. E. Budd constituted the stockholders, and were the directors of said corporation, and E. J. Jeffrey was elected and acted as president, W. A. Scoggin was elected and acted as secretary, and D. E. Budd was elected and acted as superintendent of said corporation, and under that organization the said corporation proceeded to the execution of the purposes of its incorporation.

"6. That said E. J. Jeffrey and W. A. Scoggin, relying upon and by reason of the mutual agreement and understanding had and entered into between them and said Budd, mentioned in paragraphs 2 and 3 of these findings, each paid up the subscriptions made by them to the capital stock of said corporation, being the sum of ten thousand dollars each, and said corporation, by said Jeffrey as president and director, and said Scoggin as director and secretary, and said Budd as director and superintendent, proceeded to construct, on said Washington and Eleventh streets, an iron railway, and to equip the same at a cost of about twenty thousand dollars, and to operate the same, and to use and exercise the franchise granted by said ordinance No. 3,477, and continued to do so from about January, 1883, until the commencement of this action; and during said period, the defendant, under and by virtue of the franchise granted by ordinance No. 3,477, has collected and received from passengers carried upon its road on Washington and Eleventh streets large sums of money; but the evidence does not show how much, nor does it furnish any basis for an account of the receipts and expenses of operating said railway, or of the profits of said franchise.

"7. That said D. E. Budd, defendant, was superintendent of the defendant corporation for about nine months, and took charge of the work of constructing the road on Washington and Eleventh streets, and of the operating of said road after it had been built and furnished, and received for his services in that behalf a salary from the defendant corporation of one hundred dollars a month.

"8. That said D. E. Budd, up to about the time of the commencement of this action, acquiesced in and fully consented to

and in the claims of the defendant corporation in respect to the exercise of said franchise by it, and in respect to the ownership of said road and franchise as set forth in these findings, and did not, prior to the commencement of this action, demand from said defendant corporation the possession of said streets, or any portion thereof. Said D. E. Budd did not furnish any money for the construction of said railway, but the said railway was wholly constructed with funds provided by the defendant corporation, and contributed by the said E. J. Jeffrey and W. A. Scoggin as stockholders.

"9. That said franchise, independent of the railway and equipment, is of the value of ten thousand dollars ($10,000)."

As conclusions of law, the court found that the plaintiff was not entitled to the possession of the franchise, but that the defendant was entitled to such possession. There were no findings as to the amount of damages, and so far as appears from this record, there was no evidence offered on that subject.

I do not understand that an action at law will lie for the recovery of the possession of a franchise. It is wholly intangible, and not capable of any kind of physical identification or delivery. Therefore a judgment that a party recover such an "airy nothing" would be incapable of enforcement by the ordinary form of process provided for the enforcement of the final judgments of the courts in this State. But as I understand it, this action is in substance what would be regarded at common law an action on the case to recover damages for the disturbance of the plaintiff in the employment of a franchise, and there can be no doubt that such an action will lie. (1 Chitty's Pleadings, pp. 131–142.) But in such case it is damages for the wrong done which the party recovers, and not the possession of the particular franchise. And this, in effect, was what was held by this court on the former appeal. In this view of the law, no damages having been found for the plaintiff, it is difficult to see on what ground he would be entitled to any relief here, even though we should be of the opinion that the findings show him to be still the exclusive owner of the franchise granted to him by the city of Portland. But, as has been shown, this court held on the former appeal

that the plaintiff might have associated with himself such company—the defendant—and thereby admit its members to a joint proprietorship in the enjoyment of the franchise in question; and that whether he had done so or not, was a question of fact to be determined by proof. The findings of fact, I think, settle this question against the plaintiff. He did associate with himself Jeffrey and Scoggin, and the three associates built the street railway, for the purpose of using and enjoying the identical franchise which had been granted to the plaintiff.

To all of these proceedings, the findings show the plaintiff fully assented, and in fact assisted in carrying them into full effect. Do these acts constitute a wrong to plaintiff? (*Thorne* v. *Mosher*, 20 N. J. Eq. 257.) I cannot perceive, under these findings, what wrong the plaintiff has suffered by the acts of the defendant. It was argued here that the defendant was bound to produce some writing by which the plaintiff had conveyed to it the franchise described in the complaint; that without writing signed by the plaintiff, defendant was a trespasser.

We do not find it necessary to decide at this time whether the right to lay down a railroad track in the streets of the city of Portland, to run cars thereon, and to take fare therefor, is an estate or interest in land so as to require a writing to convey it, or as to whether, lying in a grant, it can only pass by deed. The findings show such consent, acts, and acquiescence, and the expenditure of money on the faith of the grant, with the plaintiff's consent, as to preclude him from now claiming that the defendant's acts were wrongful. He was the active and efficient cause of the defendant's making large expenditures of money; he was one of its officers at the very time, and superintendent of the work. We could not allow him to now set up his own acts as such superintendent as the identical wrong committed by the defendant, of which he now complains.

In addition, the grant was to "D. E. Budd and such other *person or persons as he may associate with himself therein.*" I am inclined to think this grant carried the thing granted directly to Budd's associates equally with himself, and that the act of association was all that was necessary to point out and identify

the grantees, and that, for this purpose, no writing was necessary; but if writings were necessary, the signing of the articles of incorporation of the defendant company would be sufficient.

The principle here stated is somewhat analogous to that involved in *Spring Valley Water Works* v. *San Francisco*, 22 Cal. 434. It was there held that when the grant was to George H. Ensign and his associates and their assigns, who should within sixty days organize themselves in conformity with the laws regulating corporations, as soon as the corporation was organized the franchise granted passed to it by operation of law, without any formal assignment. And the term "associates" received a similar construction in a case involving principles akin to that. (*State* v. *Sibley*, 25 Minn. 387.) And I think the reasoning of the court in *Lechmere Bank* v. *Boynton*, 11 Cush. 369, tends to support the view suggested.

LORD, C. J.—If the proper construction of the words, "and such other persons as he may associate with himself therein," is, that by the act of associating others with him, the ordinance, *ex proprio vigore*, vests the franchise in them jointly, as intimated in the opinion, that construction is decisive of the case, and upon that ground I can concur in the result. On the other hand, if such words mean that the grant of the franchise is to Budd, and only to such persons as he may associate himself therein when he so elects, and they agree to become such associates, then as the subject-matter of the grant is an incorporeal hereditament, and lies in grant, it can only pass from him to them by deed, and the judgment of the court below is error, and ought to be reversed. It was on this last theory that the case was tried and the argument made here, the chief controversy being as to the validity of a parol agreement to effect such transfer. The court held it sufficient, which I think was manifest error.

THAYER, J., expressed no opinion, but concurred in the *result*.

Decision of the court below affirmed.