Smith, C. J.
The claims of the parties, as made by the pleadings, are substantially as follows: .
The plaintiffs, Pattisoii and wife, say,, that prior to.November 24th, 1865, Henry F. Sedam, being the owner of a tract of *235 land in Sfcorrs Township, which is now a part of Cincinnati, had prepared a plat thereof as'a'second subdivivision by him of the village of Sedamsville. This plat (which was not .then recorded, and, in fact, never was), was exhibited by Sedam to Pattison, showing a division thereof into lots of the frontages- and depths, indicated thereon and consecutively numbered, and including lots No. 27, 28 and 29, and 'which’ lay between Orchard street and Delhi and Industry túrnpiké.' Oh said November 24th, 1865, Pattison and wife' purchased from Sedam, at the price of $7,375, (which was fully paid), lots Nos. 27, 28, and part of lot No. 29; and Sedam thereupon conveyed the same to them by deed of general warranty in fee-simple, as shown on said plat, which he then agreed he would duly record. The description of the land thereby conveyed was as follows:
“ All that real estate situated in Storrs Township, Hamilton county, Ohio, to-wit: Lots No. 27, 28 and so much of lot-No. 29 as is enclosed in the following lines, to-wit: Commencing at the N. E. corner of lot No. 28, on Orchard street, thence running northwardly along Orchard street 100 feet to to a stone; thence westwardly to stone 'at the Delhi and Industry pike, and N. W. corner of lot No. 29; thence southwardly along said turnpike 68 feet to lot No. 28; thence eastwar'dly along the north line of lot No. 28 to the place of beginning, all of said premises being in H. F. Sedam’s Second Subdivision in Sedamsville; lot No. 27 being 30 feet in width on Delhi and Industry turnpike, and running back same width 200 feet to Orchard street; and lot No. 28 being 49 6-12 feet on said turnpike, and running back northwardly 200 feet to Orchard street, and fronting on Orchard street '67 feet 5 inches, as marked on the plat of said subdivision.” ''
The deed was not left for record with the recorder of the county until October 2, 1874, and it was then duly recorded; Sedam'had died in July, 1874. After his death the administra-, tors of his estate, Judges Jordan and Peck, in August. 1879, in' proceedings then'pending in the Probate, Court of 'Hamilton’ county, made another plat and subdivision'of the same iahd’,1 dividing that part of it lying between the Delhi and Industry pike and Orchard street into a greater number of lots, and *236 with different lines and numbers from the original Sedam plat. On this last plat were lots No. 133, 134, 135 and 136 and 137, fronting on the Delhi pike, and lots Nos. 138, 139, 140, 141 and 142, fronting on Orchard street, and which lots were part of the. land covered by the deed of Sedam to Pattisons.
The petition then gives the names of the persons who are now claiming to own these lots respectively. It appears that several of them are now claimed by the heirs-at-law of Sedam, who'by an amicable partition divided part of the lands which had been owned by their father, between them. Mr. I. M. Jordan claimed to own one or more which he had obtained by deed from the heirs; Schin Koski, Kruse and Schultz also claimed a part thereof.
The petition then prays to have their title to these lots quieted, and if for any reason this can not be done, they ask for an account against the administrators of Sedam, and for full relief. No allegation was made that the plaintiffs were, or ever had been in the possession of the property.
Schin Koski says, in his answer and cross-petition, that he bought the lot No. 135 of I. M. Jordan in 1883; that he is a bana fide purchaser thereof- for value, and had fully paid the purchase-money therefor without any notice, actual or constructive, of plaintiffs’ deed, or of any right or claim of theirs to the premises.
Kruse and Schulz allege their purchase of lot No.--from the heirs of Sedam, or one or more of them, and their payment therefor, without actual or constructive knowledge of plaintiffs’ deed or claim.
The answer of Mr. Jordan alleges that he acquired the title to lots 134 and 135 in-1879, under a.contract with the Sedam heirs, dated in August, 1874, without actual or constructive notice of plaintiffs’ deed or rights. (This contract was one by which the Sedam heirs agreed with -the Messrs. Jordan, that in consideration of the legal services rendered them, they would convey to the Jordans one equal third of the real estate received from their father, which was carried out by the conveyance of lots in 1879.) He avers that plaintiff negliligently allowed and agreed with Sedam that the plat and *237 deed should be kept from record, to avoid taxation, by reason of which the deed, when recorded, did not so describe the land that it could be located without oral evidence.
The answer of the Sedam heirs, in addition to this was, that without knowledge, actual or constructive, of plaintiffs’ deed, they had partitioned this and other lands among themselves, and so changed their status that it would be inequitable to allow the plaintiffs’ claim against them. The. answers of all the defendants claim that they are in possession of their respective parcels.
The reply of the plaintiffs denies that it was part of the consideration of the contract between them and Sedam (as charged), that the plat was to be withheld from record' to avoid taxation on the land or lots, or that until it was so done Sedam was to have the possession, of the property. They admit that after the transaction was completed, at Sedam’s request, they granted him a reasonable time to withhold it from the record, till he could sell other lots, but that before his death they frequently urged and insisted that he should do it, and he agreed to, but failed to comply with his promise.
On the issues thus raised we have heard the evidence submitted by the parties, and state, as briefly as we can, the conclusions at which we have arrived.
The deed of plaintiffs having been recorded on October 2, 1874, it would seem (unless for some special reason) that under the provisions of section 4134, Rev. Stats., it must be held as constructive notice of such conveyance, to all- persons who acquired an interest in said land (or sought to do so) after that time, even as against bona fide purchasers with no actual knowledge thereof.
But it is urged,-in this case, on the part of the defendants, that under the peculiar state of facts shown, and the character of the conveyance, that it did not'operate as notice to them, and ought not to prejudice their rights, for these reasons:
1st. That the description in the deed is so indefinite and uncertain that it does not operate to convey any specific property, or, if it did, as oral evidence is necessary to identify the property conveyed, that it did not operate as constructive *238 notice to those who acquired their rights after its record. And
2nd. That it was not properly indexed by the Recorder,- and therefore was not notice to them.
As to these defendants we may say, in the first place, that-the heirs of Sedam must stand in the shoes of their ancestor.They simply take his rights, if any, by descent, and if he had no interest, they have none; and the fact that they have partitioned land, of the father among themselves since his death, a¡nd since the record of Pattisons’ deed, a,nd that some of them have taken part of this land, as part of their shares in such partition, is no valid defense to the claim of plaintiffs, if tjhe land in question was really conveyed to them, by the deed from Sedam.
As to Mr. Jordan, if he, by his contract of August, 1874, had-become the equitable owner of these particular lots afterwards conveyed to him by the Sedam heirs, and had paid the purchase-money without actual or constructive notice of the Patteson deed, he would have occupied the position of a bona fide purchaser, and the subsequent record of plaintiffs’ deed would not have affected his right. But the contract of August, 1874, was only for the conveyance to him of the one undivided third pf the Sedam land, and his deed for these specific lots was not executed until after the record of Pattisons’ deed. So that he stands on the same footing with the other three purchasers of the land.
It is urged, in the third place, by defendants, that the plaintiffs not being in possession of the land at the time of the bring ing of this action, which, in effect, is one to quiet their title, that they can not recover therein.
We consider these questions in their order, and the first is: Was the description of the land in the Pattison deed such that it can now be ascertained, and so was operative to convey to them a title thereto, and to make the deed when recorded constructive .notice to those who purchased without actual notice of-it?'
Both of these questions, we think, should, be answered in: the affirmative. It is objected, that if we look at the description alone, and without knowledge of the location of the monuments called for in it, that it can not be known just what *239 land was attempted to be conveyed, and that resort must- be had to oral or other evidence, to enable us, or a person interested, to ascertain these facts. And this, we suppose, is true. The only public monuments (so to speak) called for are the two roads, or streets, which bound the lots conveyed, on the east and west, viz.: the Delhi and Industry Pike and Orchard street. But without a knowledge of the location of the stone, which the deed in effect says is situate in the east line of- Orchard street 100 feet north from the N. E. corner of lot No. 28, in the same line of the street, and in the absence of the plat exhibited to Pattison, it might be impossible to find the N. E. corner of lot No. 28, which is the starting point. But when this stone, or its location, and that of the other stone called for as being in the west line of the Delhi and Industry Pike and at the N. W. corner of lot No. 29, are ascertained, (and this is clearly and satisfactorily done by the oral evidence in the case), then the exact location of lot No. 28 and that part of lot No. 29 conveyed is easily ascertained, the south line of lot No. 29 and the north line of 28 being the same; and the exact distance of this line from the two stones being fixed by the deed, it can readily be found. There is nothing in the description in the deed which makes lot No. 27 adjoin 28 on the south, but we have the evidence of Judge Cox, who drew this deed from the plat made by Sedam, and to whom Sedam pointed out these particular lots and the stones and other corners, both on the plat and on the ground, that lot No. 27 did adjoin No. 28, and lay directly south of it, and was described on the plat as of the width mentioned in the deed.
• We understand the law to be that evidence outside of the deed itself is competent and admissible to locate and fix the monuments called for in a deed. (_See Bouvier’s Law Dictionary, title Boundaries, and cases there cited, and 5 Ohio 455, 15 Ohio 408, 23 Ohio St. 584, and 29 Ohio St. 150, where the doctrine is explicitly stated.)
And this is so, we think, almost as a matter of necessity.' In the great majority of deeds it has to be done. The universal practice is to call for stones, or stakes,.or other monuments 6f that kind which might be at any point, and if, for instancé', a call is made for a stone or a tree as a starting point, the deed *240 itself does not, as a rule, so fix that point that a surveyor, from the deed alone, would be able to locate it, but he must resort to.other, and frequently to oral evidence, for that purpose. And that being done in this case, and the location of the stones mentioned in the description of the deed being clearly identified, we think it is satisfactorily shown that the land in controversy is the same covered by the deed from Sedam to the Pattisons, and that on its being duly recorded it was constructive notice of the conveyance of the land to the plaintiffs, to all persons purchasing thereafter any part of it. There was certainly enough in the deed to put them upon inquiry if it was properly recorded. The call for the two public roads as being the east and west boundaries of the tract, would go far to identify it, and put purchasers upon inquiry.
It is claimed, however, by the subsequent purchasers, that this deed should not be held, in this case, as giving notice to them, for the reason that the Sedam plat, under which the plaintiffs purchased, was never recorded, and that, in addition to this, Sedam, in his life time, to-wit,---laid out another subdivision to Sedamsville, not covering, however the same tract laid out in the plat shown to Pattison, but having on it lots numbered 27, 28 and 29, as on the other plat, and that this was also called Sedam’s 2nd addition and was duly recorded, and that the recorder of the county, in his general topical index, entered the Pattison deed as conveying land in that subdivision, and that, being misled by this, they should not be bound by Pattison’s deed, as he had improperly consented that the other plat be kept from the record, and had also not recorded his deed for near ten years after its execution.
As to this claim, it may be said that there is no evidence of such agreement between Sedam and Pattison. It stands on the allegations of the pleadings, alleged by defendants and denied by plaintiffs. There is no evidence whatever, that the plaintiffs had any knowledge of the plat made by Sedam, recorded as the 2nd subdivision, nor that they knew of the indexing of this deed in the wrong place and as relating to an entirely different tract of land. That was a mistake of the recorder, and can not prejudice the plaintiffs. As held in Green v. Carrington, 16 Ohio St. 584, “ An index to the record *241 of a conveyance is not necessary to make the record constructive notice to a subsequent purchaser,” and the same principle would apply to a mistake made by the recorder in indexing. It is conceded in this case that Pattison’s deed was properly indexed in the volume in which it was recorded, and this was certainly sufficient. All the plaintiffs had to .do was to have it recorded.
If, then, it appeared in this case that the plaintiffs had been, in possession of the land at the time the suit, was brought, we would be of the opinion that they were entitled to a decree quieting their title to the whole of this property. It is conceded that they never have been in the possession of it, and the question then is, can it be maintained under this state of facts ?
It is practically an action to quiet the title of the plaintiffs to this land. Such is the prayer, and such was the relief grantéd in the common pleas and a writ of possession-awarded. It is conceded by counsel for plaintiffs that it does not come within the provisions of section 5779 Rev Stats., for, by its express terms, it can only be brought under that section, when the person seeking the relief is in possession of the property in dispute.
But it is urged, with much force, tíiat the plaintiffs, under the peculiar circumstanses of the case, are entitled to the relief sought, on this principle : That there has been such conduct on the part of Sedam himself, and of the administrators of his estate, with respect to this land, and the boundaries of it, as brings the action under a recognized head of equity jurisdiction, viz: that which is exercised when there is a confusion of boundaries between the lands of plaintiffs and defendants, caused by inequitable or improper conduct on the part of the defendants, or of him under -whom they claim, when the obligation was upon such defendants to protect and preserve them.
It must be conceded, we think, under the pleadings and evidence, that the conduct of Sedam with respect to the plat, with reference to which the plaintiffs took their deed, was a violation of his duty towards them. ' The law required him to record the plat before he made any sale under it. It is true, *242 the plaintiff's consented, practically, that he might not record it immediately, but afterwards urged him to do so; but he did not.comply with the request,'and died nine years after without having done so. In addition to this, his making another subdivision and calling it by the same .-name, and the action of the-administrators of his estate, in.having made another plat- of the same ground wrholly different from the first, but having lots with the same numbers as in the first plat thereof, but of different sizes, and not ho-inciding at all therewith, tended'materially to render it uncertain where plaintiffs’ lots actually were, or to have their title plainly appear upon the record. But whether all this entitles a party out of possession of land to bring an action in-a court of equity to quiet his title to it, is a question as to which we have had much doubt. ’ Having found that the plaintiffs have a title to this land as against the defendants, if it can be done consistently with the rules of law, we think we ought to afford them relief in this action, without sending them out to bring other actions against the defendants to recover the possession of the land, the title to which has been found in their favor.
The supreme court, in two cases, we think, has practically held that under our system of jurisprudence and procedure, and with a statute in force identical with sec. 5779, that there is such a ground of equity jurisdiction. (2 Ohio St. 361, and 17 Ohio St. 76.)
In the first of these two cases, Wolf v. Scarborough, 2 Ohio St. 361, the court, in the syllabus, says, “ that the bare fact that a line is in controversy, does not entitle a party to resort to this forum. There must, in. addition, be something in the nature of his title or in the circumstances of the case, that brings it under an acknowledged head of equity jurisdiction. As, for instance, want of an adequate remedy at law, ór the fraudulent suppression of evidence by his adversary, or a necessity to have resort to equity to avoid á multiplicity of suits.”
In this case, if our views, as expressed, be correct, the plaintiffs may have an adequate remedy at law, in an action to recover the possession of real estate to which they have a legal title. It cannot be claimed that they must resort to a court of equity to avoid a multiplicity of suits, and the only *243 ground on which they can, or do claim the relief prayed for, is, the conduct of Sedam, and the acts of the administrators of his estate, in.the practical destruction of one of the muniments of his title (the plat in question), by failing to record it, as he agreed and was legally bound to do, and in the making and recording of the-other plats, which operated greatly to confuse the boundaries of the land so conveyed, and cast a cloud on their title to it, rendering some proceeding necessary on their part to assert and maintain their title. Judge Story, in the first volume of his Commentaries on Equity Jurisprudence, sec. 619, in speaking of this subject, says, “ that if the confusion of boundaries has been occasioned by fraud, that alone will constitute a sufficient ground for the interference of the court. And if the fraud is established, the court will, by commission, ascertain the boundaries, if practicable.” This we are ready to do ourselves on the evidence submitted in the case.
We think the conduct of Sedam as to this and the other plat, after his conveyance to the Pattisons, was a virtual fraud upon their rights, and, taken in connection with the making of the plat of the same ground by the administrators of his estate, (which was done by them without actual knowledge of the existence or record of plaintiffs’ deed, though done after it was recorded), was such conduct as entitles the plaintiffs to the relief sought, and brings the case within the doctrine of the syllabus of the case inAHJhio St. and the section quoted from Story. And if right and proper to do this as against Sedam, if he were living, it is equally so against his heirs-at-law, and those who purchased from them after the record of Pattison’s deed. (See Wake v. Conyers, 2 Leading Cases in Eq., page and notes.)
The doubt we have had on' this point is, whether the doctrine in question applies to a case of this kind when the title to-the whole property is in question, or whether it extends only to a case where, by the fault of the defendant on whom the burden of preserving a line between the lands is cast, and who had failed to do so, the boundaries between the two had.become confused. But we see no authority or ad *244 judication thus restricting its application, and in our opinion, the principle of the doctrine applies as well to the one case as to the other.
W. L. Avery, for plaintiffs.
Jordan & Jordans, Gray & Tishbein, for defendant.
A decree will be entered accordingly. If there are assets in the hands of the administrators applicable to that purpose, the costs may be paid by them. If not, by the heirs of Sedam.
(Judge Cox, having been of counsel, did not sit in this case).